UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK BURTON,<br>CDCR #AI-5407,<br><br>                                   Plaintiff,<br><br>vs.<br><br>WARDEN McVAY, et al.,<br><br>                                   Defendants. | Case No.: 24-cv-1302-MMA (JLB)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS**<br><br>[Doc. No. 2]<br><br>**(2) DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |

Plaintiff Derek Burton, a state prisoner proceeding *pro se*, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983.  Doc. No. 1.  Plaintiff alleges that while confined at the R.J. Donovan Correctional Facility ("RJD") in San Diego, California, he fell and broke his arm due to Defendants' failure to repair a walkway and then received inadequate medical care due to retaliation and discrimination.  *See id*.  Plaintiff has also filed a Motion to proceed in forma pauperis ("IFP").  Doc. No. 2.

### I. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55,

1

although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets.  *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).  Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

Plaintiff's prison certificate shows he had an average monthly balance of $196.37 and average monthly deposits of $195.83 for the 6-months preceding the filing of this action, and an available balance of $0.00. Doc. No. 3 at 1.  The Court **GRANTS** Plaintiff's motion to proceed IFP and declines to assesses the initial partial filing fee of $39.27 because it appears Plaintiff has insufficient funds to pay it.  *See Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.")  The Court directs the Secretary of the CDCR or his designee to collect and forward to the Clerk of Court the $350 balance of the filing fee required by 28 U.S.C. § 1914 pursuant to the installment payment provisions of 28 U.S.C. § 1915(b)(1).

///

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(E)(2) & 1915A(B)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard.  *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights."

*Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted).

**B.  Allegations in the Complaint**

Plaintiff alleges that in May 2023, he began complaining through inmate grievances and letters that the gravel path outside building 14 on C-Yard at RJD was uneven with potholes and was not safe or accessible as required by the Americans with Disability Act ("ADA").  Doc. No. 1 at 11.  In early August 2023, Plaintiff informed Defendants RJD Associate Warden Lewis and RJD Corrections Sergeant Salazar that he had twisted his ankle twice on the path and that his cane could not maintain a grip, but Lewis threatened Plaintiff with a cell search and Salazar threatened to take his job away and issue him a disciplinary charge, which caused Plaintiff to stop filing complaints about the path.  *Id*. at 12.  Near the end of August 2023, Plaintiff wrote to Defendant RJD ADA Associate Warden Reyes informing him that he almost fell into a hole in the path and that it was getting nearly impossible for persons with walkers, wheelchairs and canes to access building 14.  *Id*.  On August 25, 2023, Plaintiff fell and broke his arm, which required transportation to an outside hospital for treatment, as a result of the unsafe condition of the walkway.  *Id*. at 3.  He claims Defendants Lewis, Reyes, RJD Warden McVay, RJD Warden Hill and RJD C-Yard Captain Davis knew of the need to repair the walkway but failed to do so from negligence and deliberate indifference to a risk of slip and fall, in violation of the First, Eighth and Fourteenth Amendments and the ADA.  *Id*. at 3, 15.

Plaintiff alleges that after his fall, beginning on September 15, 2023, he advised and warned Defendants Lewis, Reyes, RJD Correctional Sergeant Chaudry, an unnamed RJD ADA Coordinator, unnamed RJD Correctional Officers and "others responsible" for repairing the walkway, of its dangerous condition, but Defendants Lewis, Hill, Reyes, Facility C Captain Davis and Facility C Correctional Sergeant Alejandre failed to repair

it, and Chaundry threatened to search his cell for contraband. *Id*. at 4, 12. He alleges that as a result of filing an inmate grievance regarding the condition of the walkway, the "named defendants" along with "unnamed defendants" arranged for a retaliation campaign against Plaintiff, including illegal cell searches and disciplinary charges, and failed to supply him with a cane, a walker, a wheelchair or rehabilitation therapy. *Id*. at 4, 13. On September 20 and 23, and October 12 and 13, 2023, Defendant RJD Correctional Sergeant Banuelos inspected the walkway with two other RJD Sergeants and knew or should have known of its dangerous condition but did not make repairs. *Id*.

Plaintiff alleges all Defendants violated his rights to due process and equal protection by discriminating against him based on his "class, gender or race," and were deliberately indifferent to his status as an ADA patient and a member of the mental health delivery system under psychiatric care. *Id*. at 5. He names additional Defendants but includes no identifiable allegations against them, including RJD Associate Appeals Warden Palmer, RJD Corrections Sergeants Ayala, Cowart and Henderson, RJD Correctional Officers Fernandez, Garcia and John Does 1-10, and RJD Plant Operator/IOC Supervisor Workers Develasco and John Does 1-5. *Id*. at 10-11.

**C. Analysis**

   **1. Eighth and Fourteenth Amendment deliberate indifference claims**

Plaintiff claims Defendants were deliberately indifferent to his safety by failing to repair the walkway, which caused him to fall and break his arm, and upon his return from the hospital failed to provide rehabilitation therapy and mobility aides such as a cane, walker or wheelchair. Doc No. 1 at 3. Prisoner medical care may amount to cruel and unusual punishment in violation of the Eighth Amendment, as applied to the States through the Fourteenth Amendment, when medical professionals are "deliberately indifferent" to an inmate's "serious" medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which

prison physicians provide medical care.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03. A prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The allegations in the Complaint with respect to the serious medical need prong in relation to Plaintiff's broken arm, which required transportation to an outside hospital for treatment, are sufficient to survive the "low threshold" of screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

However, the Complaint as drafted fails to plausibly allege any Defendant was deliberately indifferent to that serious medical need. The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer*, 511 U.S. at 837. A prison official, acting with deliberate indifference, must expose a prisoner to a sufficiently "substantial risk of serious harm" to his health. *Id*. at 843.

      Plaintiff alleges Defendants were responsible for and aware of the unsafe condition of the walkway into Building 14 which caused him to fall, and that although they inspected the walkway after he fell they did not repair it. Doc No. 1 at 3. Although Plaintiff alleges the condition of the walkway was such that an inference could be drawn that it posed a substantial risk of serious harm, and that he informed Defendants of its condition, the Complaint does not plausibly allege any Defendant *actually* drew an inference that the walkway posed such a risk, as Plaintiff alleges Defendants ordered the walkway inspected after he fell but did not order repairs as a result of the inspections, which he attributes in part to their negligence. *See Farmer*, 511 U.S. at 837 (a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *id*. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety.") If Plaintiff wishes to proceed with an Eighth Amendment claim based on his fall, he must set forth facts which plausibly allege a Defendant *actually drew an inference* that the walkway posed a *substantial risk of Plaintiff falling*, as opposed to alleging the walkway was negligently maintained. *See e.g. Levy v. Department of Corrections of Washington*, 2013 WL 1855854, at *2 (W.D. Wash. May 1. 2013) (finding no Eighth Amendment violation from trip and fall in sprinkler hole on recreation yard); *Coleman v. Sweetin*, 745 F.3d 756, 764 & n.7 (5th Cir. 2014) (collecting cases and noting "prisoner slip-and-fall claims almost never serve as a predicate for constitutional violations.") Although Plaintiff alleges he informed Defendants Lewis and Salazar that he had twisted his ankle twice on the path and that his cane could not maintain a grip, and informed Defendant Reyes that he almost fell into a hole in the path and that it was getting nearly impossible for persons with walkers, wheelchairs and canes to access building 14 (Doc No. 1 at 12),

Plaintiff must allege Defendants knew of and consciously disregarded dangers *specific* to him, such as disability or accommodation findings from which they *actually drew* an inference of an *excessive* risk of harm in navigating the walkway due to obstacles Plaintiff could not avoid. *See Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996) (prisoner failed to plead exacerbating conditions rendered him unable to provide for his own safety as necessary to state an Eighth Amendment claim); *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) ("[s]lippery floors without protective measures could create a sufficient danger" when coupled with allegations that inmate using crutches had repeatedly fallen and injured himself on shower floors).

      Plaintiff next alleges Defendants deliberately disregarded a serious need for medical treatment when they denied him a cane, a walker, a wheelchair and rehabilitation therapy upon his return from the hospital. Doc. No. 1 at 4, 13. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quote marks omitted). However, a prisoner can only show deliberate indifference from such a delay where there is a purposeful act or failure to act by the prison official that results in harm. *Jett*, 439 F.3d at 1096; *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) ("A prison official cannot be found liable under the Cruel and Unusual Punishment Clause [of the Eighth Amendment] . . . 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"), quoting *Farmer*, 511 U.S. at 837. The Complaint does not plausibly allege Defendants should have realized failing to provide Plaintiff with a cane, a walker, a wheelchair or rehabilitation therapy presented a risk to him because there are merely conclusory allegations that the nature of his injury required those things, and no factual allegations Defendants were aware they were necessary. Plaintiff does not plausibly allege any Defendant *actually drew* an inference that denying those things placed him at a

substantial risk of serious harm, as opposed to merely alleging at most negligence or medical malpractice, because there are no factual allegations he requested them and they were denied despite a medical need for them. *See Colwell*, 763 F.3d at 1068 ("A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference.") The allegations are conclusory and devoid of facts as to what information Defendants had about Plaintiff's medical need for those items. *See Iqbal,* 556 U.S. at 678 (the "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting th[e] plausibility standard); *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety.")

To the extent Plaintiff seeks to hold any Defendant liable based solely on their supervisory role, he may not rely on a respondeat superior theory of liability under § 1983 but must allege facts which plausibly show each individual defendant was personally involved in the alleged constitutional violation. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983.") A prisoner must allege "(1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Supervisors may only be held liable if they were "personally involved in the constitutional violation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1074-75 (9th Cir. 2013). If Plaintiff seeks to hold any Defendant liable in their supervisory role, he must

allege a causal connection between a constitutional violation and their unlawful conduct. *Id.*; *see also Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.)

Plaintiff's Eighth Amendment deliberate indifference claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 2. Retaliation claim

Plaintiff next claims that as a result of his having filed inmate grievances and complaints regarding the condition of the walkway, the "named defendants" along with "unnamed defendants" arranged for a retaliation campaign against him, including threats of cell searches and disciplinary charges. Doc No. 1 at 4.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.") Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff had not plausibly alleged a retaliatory motive because the allegations in the Complaint that Defendants were motivated by his inmate grievances and complaints regarding the condition of the walkway are entirely conclusory. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a 42 U.S.C. §1983 claim); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials

retaliated on the basis of an inmate's First Amendment activity). Although the timing of the Defendants' actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference or retaliatory intent. *Pratt*, 65 F.3d at 802. Plaintiff must allege *facts* from which a plausible inference can be drawn that adverse action was taken in retaliation for his protected activity, such as filing inmate grievances. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act). Even if Plaintiff could overcome that pleading defect, he must plausibly allege the lack of a legitimate penological justification for each Defendants' action. Although he uses the phrase lack of a correctional goal or penological interest in failing to properly maintain the walkway (*see* Doc No. 1 at 13), they are conclusory, as are the allegations of threats of illegal cell searches and disciplinary charges (*id*. at 4, 12), without any factual allegations whether any such threats were carried out. The mere making of threats or harassing comments does not give rise to a civil rights claim under § 1983. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998) (verbal harassment is not cognizable as a constitutional deprivation under § 1983); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under § 1983).

Plaintiff's First Amendment retaliation claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 3. ADA claim

Plaintiff alleges Defendants were deliberately indifferent to his status as an ADA patient in failing to maintain the walkway in a safe condition.[1]  Doc No. 1 at 5.  In order to state a claim under the ADA, Plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of (his) disability.'

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007).

To the extent Plaintiff alleges Defendants violated his rights under the ADA by failing to maintain the walkway in a safe condition and provide him with mobility assistance devices and rehabilitative therapy after his fall, the allegations in the Complaint fail to state an ADA claim because they fail to plausibly allege Defendants' actions were taken by reason of his disability.  *Id*.  They are also impermissibly conclusory.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.)

To the extent Plaintiff sought to bring an ADA claim in the Complaint, it is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim.  *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 4. Discrimination claim

Finally, Plaintiff alleges in an entirely conclusory manner that all Defendants violated his rights to due process and equal protection by discriminating against him based on his "class, gender or race," including his status as an ADA patient and a member of the mental health delivery system under psychiatric care.  Doc No. 1 at 5.

---

[1]  Plaintiff states he is currently a member of a class action regarding ADA accessibility in California prisons in which the condition of the walkway is at issue.  Doc No. 1 at 4.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff has not alleged facts which plausibly support an allegation that any Defendant acted out of discriminatory animus.  Rather, it appears Plaintiff alleges Defendants acted out in retaliation for his continued complaints of the condition of the walkway.  In any case, "[i]ntentional discrimination means that a defendant acted at least in part *because* of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994).  Because Plaintiff's discrimination claim is wholly conclusory without any supporting factual allegations whatsoever with respect why he claims Defendants acted with a discriminatory animus, it fails to state a claim for relief.  *Id*.; *see also Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient" to state a claim.); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" state a claim).

Based on the foregoing, Plaintiff's discrimination claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

**D.  Leave to Amend**

In light of Plaintiff's pro se status, the Court grants leave to amend.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III. Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP.  Doc No. 2.

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. **DISMISSES** all claims against all Defendants in the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants.  Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint.  Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")  If Plaintiff fails to amend, the Court will dismiss this action for failure to state a claim and failure to prosecute.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take

advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated: August 13, 2024

HON. MICHAEL M. ANELLO
United States District Judge